UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                :

OSCAR RHODES,                          :         07 CV 1039 (ARR)
                                  :

                 Petitioner,      :

    -against-                       :        OPINION AND ORDER
                                  :

ROBERT ERCOLE,                    :        NOT FOR PRINT OR
Superintendent, Green Haven Correctional Facility,    :        ELECTRONIC
                                  :        PUBLICATION

                Respondent.     :
                                  :
------------------------------------------------------------------ X

ROSS, United States District Judge:

     Pro se petitioner Oscar Rhodes filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 on March 25, 2007. He raises the following claims: (1) he was

denied his right to a fair trial by the prosecutor's comments during her opening statement, by her

cross-examination of his alibi witness, and by her summation; (2) he was denied his rights to a

fair trial and to present a defense by the trial court's preclusion of cross-examination about a

second suspect's inculpatory statements; (3) he was denied his rights to a fair trial and to

confront the witnesses against him by the trial court's admission of hearsay statements; (4) his

statement to the police was coerced and should have been suppressed; (5) he was denied the

effective assistance of trial counsel; and (6) he was denied the effective assistance of appellate

counsel. See Pet. ¶¶ 9, 12.

## BACKGROUND

     Following a jury trial in Queens County Supreme Court, the petitioner was convicted of

murder in the second degree and criminal possession of a weapon in the first degree in

connection with the death of Abdullah Cakira, a livery cab driver. On December 4, 2000, he was sentenced to concurrent terms of 25 years to life and ten years for the two respective charges. See Sentencing Tr. at 27. He remains incarcerated pursuant to this judgment of conviction.

In October 2002, the petitioner, through assigned counsel, filed a brief on appeal with the New York Appellate Division, Second Department, arguing that prosecutorial misconduct deprived him of a fair trial and that the trial court's preclusion of cross-examination regarding an alleged second suspect deprived him the opportunity to present a defense. See Brief for Defendant-Appellant, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). In addition, the petitioner filed two supplemental briefs pro se, raising additional claims not included in his initial brief filed by his assigned appellate counsel. The Second Department denied his appeal in all respects, see People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004), and the Court of Appeals denied leave to appeal. People v. Rhodes, 4 N.Y.3d 747 (2004).

In addition to his direct appeal, the petitioner filed three motions to vacate his conviction pursuant to N.Y. Crim. Proc. Law. § 440.10, claiming in each motion that his trial counsel had provided ineffective assistance. See People v. Rhodes, Ind. No. 2911-97 (Queens Cty. Supreme Ct. Jan. 17, 2003; May 9, 2003; Mar. 24, 2004). All three motions were denied, and the Second Department denied leave to appeal.

The petitioner also filed two petitions for a writ of error coram nobis, claiming that his appellate counsel had provided ineffective assistance. See People v. Rhodes, 818 N.Y.S.2d 485 (N.Y. App. Div. 2006); People v. Rhodes, 828 N.Y.S.2d 914 (N.Y. App. Div. 2007).[1] These

---

[1]The instant petition, filed on March 5, 2007, was stayed pending resolution of the second coram nobis petition. See Order dated May 18, 2007 (Dkt. No. 7). On July 10, 2007, after the petitioner informed the court that the Court of Appeals had denied leave to appeal the denial of

petitions were also denied, and the Court of Appeals denied leave to appeal in each instance, on September 18, 2006 and June 22, 2007, respectively.

## DISCUSSION

### A.    AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether

---

his second coram nobis petition, the court lifted the stay.

the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's

4

opinion suggests reliance upon procedural grounds rather than a determination on the merits."

Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a

"conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim"

applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with

federal law . . . [a]bsent a clear and express statement of reliance on a state procedural bar."

Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v.

Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-

bar determinations).

## B.  **Procedural Bar**

Federal courts may not review state court decisions that are based primarily on state

procedural law unless petitioner can show both cause and prejudice or a fundamental miscarriage

of justice.  See Jimenez, 458 F.3d at 138 (citing  Coleman v. Thompson, 501 U.S. 722, 749-50

(1991)).  The Second Circuit has explained that there are "two mutually exclusive categories of

state court decisions of a federal claim," those that "fairly appear either to rest primarily on

federal law or to be interwoven with federal law," and those "that fairly appear to rest primarily

on state procedural law."  Id.  Where the state court uses language such as "the defendant's

remaining contentions are either unpreserved for appellate review or without merit" the claim is

subject to federal review.  Fama v. Commissioner of Correctional Services, 235 F.3d 804, 810-

11 (2d Cir. 2000).  However, a state court decision stating that a claim was "not preserved for

appellate review" before ruling "in any event" on the merits still amounts to a procedural default

Id. at 810 n.4.  In determining whether the state court based its decision on state procedural

grounds, the court may look "behind the opinion to the state court's awareness of a procedural

bar and the state court's practice when faced with such a bar." Jimenez, 458 F.3d at 138-39

(citing Quirama v. Michele, 983 F.2d 12, 13 (2d Cir. 1993)).

Such a procedural bar to federal habeas review may be excused, however, if the petitioner

demonstrates either (a) cause for the procedural default and actual prejudice from the alleged

violation of federal law, or (b) that the failure to consider the claims will "result in a fundamental

miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of justice occurs "in an

extraordinary case, where a constitutional violation has probably resulted in the conviction of one

who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To be credible, such a

claim requires petitioner to support his allegations of constitutional error with new reliable

evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). A

petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is

more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293

F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

## C.    Petitioner's Claims

The petitioner raises the following claims: (1) he was denied his right to a fair trial by the

prosecutor's comments during her opening statement, by her cross-examination of his alibi

witness, and by her summation; (2) he was denied his rights to a fair trial and to present a defense

by the trial court's preclusion of cross-examination about a second suspect's inculpatory

statements; (3) he was denied his rights to a fair trial and to confront the witnesses against him by

the trial court's admission of hearsay statements; (4) his statement to the police was coerced and

should have been suppressed; (5) he was denied the effective assistance of trial counsel; and (6)

6

he was denied the effective assistance of appellate counsel. See Pet. ¶¶ 9, 12.[2]

## 1. Prosecutorial Misconduct

The petitioner argues that prosecutorial misconduct deprived him of a fair trial. He first challenges the prosecutor's cross-examination of the petitioner's wife, who was called as an alibi witness. The petitioner argues that the prosecutor's cross-examination was "extremely suggestive" and communicated the prosecutor's personal belief as to the petitioner's guilt. See Pet'r's Reply at 7 (citing United States v. Young, 470 U.S. 1, 18 (1985); United States v. Modica, 663 F.2d 1173, 1178 (2d Cir. 1981)). Specifically, the petitioner faults the prosecutor for having improperly impugned the reputation of his wife by questioning her about "irrelevant facts" such as the age disparity between the petitioner and his wife, the fact that they met in a bar, her children from a prior relationship, and implying that she "had cheated the government via welfare." Id. at 7-8. The petitioner further faults the prosecutor for eliciting from this witness "her knowledge of defendant's incarceration to undermine her alibi testimony,"id. at 8, a line of questioning to which defense counsel unsuccessfully objected, id. (citing Trial Tr. at 511-12), and moved for a mistrial, id. (citing Trial Tr. at 533-34).

The petitioner also argues that the prosecutor's summation denied him a fair trial by "arguing [petitioner's] criminal propensity, vouching for witnesses, and urging the jurors to do their 'duty' as 'keepers of the flame of justice' and convict [the petitioner]. Pet. ¶ 9; see also Brief for Defendant-Appellant at 20, 26-31, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). The petitioner argues that the "cumulative effect of the prosecutor's improper

---

[2]The petition references papers filed in connection with the petitioner's direct appeal, § 440 motions, and coram nobis petitions. See Pet. ¶ 12. The court liberally construes the pro se petition as raising all of the specific claims articulated in these earlier papers.

remarks and misconduct warrant a reversal. . . ." Id. at 10.

The Second Department denied the petitioner's appeal, concluding first that his "contention regarding the prosecutor's cross-examination of his alibi witness about her status as a welfare recipient, as well as her relationship with the defendant and her eldest child is not preserved for appellate review, and, in any event, is without merit." People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). The state court explicitly cited the New York's contemporaneous objection rule, N.Y.Crim. Proc. Law § 470.05(2), as the basis for its denial of this aspect of the petitioner's appeal, which the Second Circuit has held amounts to an independent and adequate state ground precluding habeas review. See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). Petitioner is thus procedurally barred from seeking federal habeas review on this claim unless he demonstrates either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result from the court's refusal to hear the claim. See Coleman, 501 U.S. at 750.

Regarding the petitioner's challenges to the prosecutor's summation, some of the challenges are procedurally barred while some warrant review by this court. The state court opinion states that the petitioner's "claims of improprieties in the prosecutor's summation [are] largely unpreserved for appellate review, " but the opinion does not attempt to identify which claims were preserved and which were not. People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). However, the court may look to the arguments raised in the briefs submitted to the court, as well as to typical state practice, in determining which of the petitioner's specific challenges are procedurally barred. See Jimenez, 458 F.3d at 138-39. The government argued on direct appeal that the following challenges to the prosecutor's summation were unpreserved

8

due to defense counsel's failure to object at the time: the prosecutor's references to the petitioner's criminal history and experience with the criminal justice system, Brief for Respondent at 10, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004) (citing Trial Tr. at 733-734); the prosecutor's suggestion that for the petitioner's theory that he was framed to have been true, Detective Lockwood would have had to have knowingly arrested an innocent man while allowing the real murderer to remain free, id. at 10-11 (citing Trial Tr. at 727); and the prosecutors request that the jury do justice by returning a guilty verdict, id. at 11 (citing Trial Tr. at 758). Moreover, the record confirms that defense counsel failed to object to these aspects of the prosecutor's summation, and, as explained previously, New York's contemporaneous objection rule is a well established basis for a procedural default. See Garcia v. Lewis, 188 F.3d at 79.

The state court denied the petitioner's remaining challenges to the prosecutor's summation, which were properly preserved for appeal, on the merits. The state court explained that "a prosecutor may fairly comment on the evidence and the inferences to be drawn therefrom" and concluded that the "prosecutor's statements did not transcend the broad bounds of rhetorical comment permitted in summation, and constituted either fair comment to the evidence presented, or fair response to the defense counsel's summation." Id. (internal citations omitted).

Applying the AEDPA standard, the petitioner has not shown that the state court's denial of these challenges to the prosecutor's summation was contrary to, or involved an unreasonable application of, clearly established federal law. As a general matter, the Supreme Court has stated that prosecutorial comments constitute a constitutional violation only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v.

DeChristoforo, 416 U.S. 637, 643 (1974). The threshold question is whether the comments were improper, considering the cumulative effect of the comments as a whole, see, e.g., Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990), in the context of the entire trial. See, e.g., Donnelly, 416 U.S. at 643; Miranda v. Bennett, 322 F.3d 171, 181 (2d Cir. 2003) ("[t]he merits of a fair trial claim will depend on the likely impact of the misconduct in light of the trial proceedings as a whole."). If the comments at issue are improper the court must determine whether the challenged remarks "were so prejudicial that they rendered the trial in question fundamentally unfair." Floyd v. Meachum, 907 F.2d 347, 353 (1990) (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986)). "It is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations omitted).

None of the prosecutor's comments to which defense counsel timely objected were even improper, let alone unfair or prejudicial. The petitioner argued on direct appeal that the prosecutor improperly used a testifying officer's "position as a local police officer to vouch for his credibility" against the petitioner's. Brief for Defendant-Appellant at 27-28, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004) (citing Trial Tr. at 727). The petitioner faulted the prosecutor for arguing "that, as a 'veteran detective charged for many years' with 'keeping[ing] the peace in this county,' Lockwood's testimony must be credited above" the petitioner's. Id. Nothing about this comparison between two testifying witnesses was improper, unfair, or prejudicial. The state court's denial of the petitioner's challenges to the prosecutor's summation that were preserved for appeal was not contrary to, nor did it involve an unreasonable

10

application of, clearly established federal law.

## 2. Preclusion of Cross-Examination Regarding an Alleged Second Suspect

The petitioner next argues that he was denied his right to a fair trial when the trial court precluded cross-examination of Detective Lockwood regarding the investigation of another suspect, Brian Miles. See Pet. ¶ 9; Brief for Defendant-Appellant at 33-35, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004) (citing Trial Tr. at 437, 441). After the trial judge sustained the prosecution's objection to this line of questioning, Trial Tr. at 437-38), defense counsel explained to the trial judge that he had received information "that the police officers got a tip that Brian Miles had made a statement to the effect that he had had a dispute with the cab driver and shot the cab driver," and that the "police ultimately decided he was not a suspect." Id. at 440-41. Defense counsel argued that this account of Miles' statement was "strikingly similar" to the petitioner's alleged confession, and that the cross-examination of Detective Lockwood "goes to the issue of whether Mr. Rhodes was coerced in order to give a story to tell on the tape and the written statements." Id. at 441.

The Second Department's opinion denying the petititioner's direct appeal does not even mention this argument, even in generic terms.[3] The court thus reviews this claim de novo. See Aparicio v. Artuz, 269 F.3d at 93.

"The Constitution requires that criminal defendants be afforded 'a meaningful opportunity to present a complete defense.'" Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004),

---

[3]The opinion states in the final paragraph that the petitioner's "remaining contentions raised in his supplemental pro se brief are either unpreserved for appellate review or without merit," People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004), but the opinion does not include a similar catch-all disposition of the remaining contentions raised in the petitioner's original brief.

cert. denied 543 U.S. 879 (2004) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks omitted)). "However, 'the power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled.'" Id. (quoting Wade v. Mantello, 333 F.3d 51, 58 (2d Cir. 2003)). "Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" Id. (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted)).

In this instance, the trial judge properly excluded inadmissible hearsay that was at best marginally relevant to the defendant's case at trial. The petitioner sought to cross-examine Detective Lockwood regarding a "tip" that they had received regarding an alleged confession made by another suspect. See Brief for Defendant-Appellant at 34, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). This "tip" was made by an anonymous, out-of-court declarant, it was offered for the truth of the matter asserted, and none of the exceptions to the rule against hearsay apply. Defense counsel argued at trial, and petitioner argued on appeal, that this line of questioning was relevant to establishing the petitioner's claim that his own confession had been coerced, see Trial Tr. at 441; Brief for Defendant-Appellant at 33-35, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004), but the record does not show that the trial court excluded an area of testimony essential to the petitioner's case. On the contrary, defense counsel cross-examined Detective Lockwood about the circumstances of the petitioner's interrogation. See Trial Tr. at 407-413. The trial court properly excluded of hearsay testimony concerning an anonymous tip received by the police.

### 3. Admission of Hearsay Statements

The petitioner also argues that he was denied his rights to a fair trial and to confront the witnesses against him by the trial court's admission of hearsay statements. Pet. ¶ 9; Supplemental Pro Se Brief for Defendant Appellant at 10-15, <u>People v. Rhodes</u>, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). Specifically, the Second Department denied this aspect of his appeal as "either unpreserved for appellate review or without merit,"[4] which amounts to an adjudication on the merits under AEDPA. <u>See</u> <u>Fama</u>, 235 F.3d at 810-11.

Again, the petitioner cannot demonstrate that any of these decisions violated New York's evidence rules or deprived the petitioner of a fundamentally fair trial. <u>See</u> <u>Zarvela v. Artuz</u>, 364 F.3d at 418. The petitioner first challenges the prosecutor's general questioning of Detective Lockwood regarding how the petitioner's name surfaced as a suspect in the case. <u>See</u> Supplemental Pro Se Brief for Defendant Appellant at 11, <u>People v. Rhodes</u>, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004) (citing Trial Tr. at 309-11). Although this testimony included information that appears to have been inadmissible hearsay, the prosecutor did not elicit, and Detective Lockwood did not provide, any specific out-of-court statements. The challenged testimony provided the general context through which the petitioner became a suspect in the investigation and the aliases or nicknames known to be used by the petitioner. <u>See</u> Trial Tr. at 309-11. To the extent that any of this testimony should have been excluded, however, none of the testimony was significant enough to have deprived the petitioner of a fair trial.

The petitioner next challenges the admission of Detective Lockwood's testimony that he

---

[4]The decision stated generally that the petitioner's "remaining contentions raised in his supplemental pro se brief are either unpreserved for appellate review or without merit." <u>People v. Rhodes</u>, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004).

told the petitioner, during the interrogation, about a witness who had informed them that she had been with the petitioner during the shooting. See Supplemental Pro Se Brief for Defendant Appellant at 11-12, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). In the relevant portion of his testimony, Detective Lockwood was describing his interrogation of the petitioner, and he had begun to explain that he told the petitioner that the police had spoken to a witness who claimed to be with the petitioner when the shooting happened. Trial Tr. at 332. When Detective Lockwood began to recount what this witness had told the police, defense counsel objected.

During a conference held while the jury was out of the courtroom, see id. at 333-44, the prosecutor argued that the Detective's statement about what the witness had told them was not offered for its truth, but rather to explain the petitioner's state of mind. Id. at 336. The prosecution sought to provide context for the petitioner's subsequent confession, which occurred after the petitioner was confronted by this possibility. See id. at 335-38. The prosecutor argued that after hearing this information, the petitioner would have known "that the woman who was with him must have given him up" and then must have "rationalized that the only way to handle this was to give a statement and to put a spin on it." Id. at 337. Defense counsel countered that the prosecution was simply attempting to get this witness's testimony in front of the jury without providing an opportunity for cross-examination; the prosecution did not intend to call this individual as a witness. See id. at 339. Defense counsel argued that the testimony was in fact offered for the truth of the matter asserted, id., and then proposed that the Detective's testimony be restricted to stating generally that "he told Mr. Rhodes that there were witnesses who identified him," without going into "the specific details of [the witness's] statement." Id. at 340.

The trial judge agreed with this suggestion, instructing the prosecutor " to tailor the testimony as [defense counsel] placed it."

When the direct examination of Detective Lockwood resumed, he testified that he "had informed Mr. Rhodes that there was a witness to this shooting, and the witness tells me that she was with him when he shot and killed this livery cab driver." Id. at 345-46. When defense counsel objected, the trial judge instructed the jury that "this testimony is not being offered for the truth of it." Id. at 346. Rather, the judge instructed, it is "being offered just for that fact that the detective told that to the defendant" and "to establish the state of mind of the defendant at that time." Id. The judge further instructed the jury that what the Detective told the petitioner was not necessarily true. Id.

This testimony was not offered to prove the truth of the matter asserted but to illuminate the petitioner's state of mind and to provide narrative context regarding an important aspect of the petitioner's defense. It was therefore admissible under New York law. See, e.g., People v. Loria, 593 N.Y.S.2d 629, 639 (N.Y. App. Div. 1993) (statement of out-of-court declarant is admissible if "not introduced for the truth of the matter, but rather to establish the states of mind of defendant and the victim"); see also People v. Butler, 873 N.Y.S.2d 617, 617 (N.Y. App. Div. 2009) (approving of testimony "not offered for its truth, but for the legitimate non-hearsay purpose of completing the narrative and explaining why the police approached defendant"). Furthermore, admitting this evidence did not deprive the petitioner of a fundamentally fair trial, especially given the narrow scope of the Detective's testimony and the limiting instruction provided by the trial judge. The trial judge allowed the prosecution to provide context for the petitioner's confession and to rebut the claim that it had been coerced without introducing the

15

details of this non-testifying witness's statements. Finally, this testimony did not violate the petitioner's rights under the Confrontation Clause, see United States v. Mejia, 545 F.3d 179, 198 (2d Cir. 2008) (citing Crawford v. Washington, 541 U.S. 36 (2004)), because there is no indication that the non-testifying witness's statements were testimonial, and because Detective Lockwood only testified that he told that the petitioner that a witness had implicated him rather than relaying the actual statements of the non-testifying witness. This claim for habeas relief must therefore be denied.

### 4. Admission of Involuntary Confession

The petitioner also claims that the state court erred by admitting his confession, which he claims was involuntary and obtained after he was beaten, threatened, and coerced. See Pet. ¶ 9; Supplemental Pro Se Brief for Defendant Appellant at 10-15, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). The Supreme Court has held that "the ultimate question, whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter of independent federal determination." Miller v. Fenton, 474 U.S. 104, 112 (1985); see also Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997). However, as already noted, factual determinations by a state court are entitled to a "presumption of correctness," and the petitioner carries burden of overcoming that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See Cotto v. Herbert, 331 F.3d 217, 233 (2d Cir. 2003). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003). "Credibility determinations are properly within the province of the state court that presided over the . . . evidentiary hearing." Shabazz v. Artuz, 336 F.3d

154, 163 (2d Cir. 2003) (citing <u>Patton v. Yount</u>, 467 U.S. 1025, 1038 (1984)).

At a pre-trial hearing, the trial court heard testimony regarding whether the petitioner received Miranda warnings and voluntarily made inculpatory statements. At this hearing, Detective Lockwood testified that, prior to interrogating the petitioner, he "read him his Miranda Warnings," February 1, 2000 Hr'g Tr. at 30, and that the petitioner signed a waiver form. <u>Id.</u> at 32-34. Detective Lockwood further testified that the petitioner agreed to make an oral statement, <u>id.</u> at 38, in which he confessed to having shot and killed the livery cab driver, <u>id.</u> at 39, which he then agreed to memorialize in a written statement. <u>See id.</u> at 42-50. Detective Lockwood testified that he read the written statement back to the petitioner and that they each then signed the statement. <u>Id.</u> at 51-52. Detective Lockwood then asked several follow-up questions, and these questions, along with the petitioner's answers, were written in a notebook that was also signed by the petitioner. <u>Id.</u> at 52-59. Finally, Detective Lockwood testified that the petitioner agreed to make a videotaped statement for the District Attorney, which was played for the court at the hearing. <u>Id.</u> at 59-61. Based on this evidence, the court denied the suppression motion.

There is no evidence to support the petitioner's claim that his inculpatory statements were involuntary or the product of any coercion, threats, or violence. Moreover, the state court's factual determinations are entitled to a presumption of correctness, and the petitioner has failed to present clear and convincing evidence to overcome this presumption. The court therefore finds that the petitioner's confession was voluntary and that the hearing court was right to deny the suppression motion.

### 5. Ineffective Assistance of Trial Counsel

The petitioner also claims that he was denied the effective assistance of trial counsel. <u>See</u>

17

Pet. ¶ 9. He raised different versions of this argument in each of his three § 440 motions. The decision denying the petitioner's first § 440 motion explains that the motion was denied, at least in part, because it was "procedurally barred" by N.Y. Crim. Proc. L. §§ 440.30(4)(b) and 440(4)(d) due to the petitioner's failure to contain sufficient sworn allegations of fact. See People v. Rhodes, Ind. No. 2911-97, Memo. at 2 (Queens Cty. Supreme Ct. Jan. 17, 2003). However, this determination must nonetheless be evaluated as an adjudication on the merits under AEDPA because it involves at least some consideration of the merits of the petitioner's claim. See Mitchell v. Artus, No. 07 Civ. 4688, 2008 WL 2262606, at *29 n. 44 (S.D.N.Y. June 2, 2008).

In order to demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 698.

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective

assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at

689. However, failure to pursue a particular course of action is not considered strategic when it

is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting

his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

In his first § 440 motion, the petitioner claims that trial counsel was ineffective by failing

to call an eyewitness, Thelma Stewart. See Mot. to Vacate Judgement at 2-7, People v. Rhodes,

Ind. No. 2911-97 (Queens Cty. Supreme Ct. Jan. 17, 2003). The petitioner has failed to

demonstrate that this supposed eyewitness would have assisted his defense. In fact, his motion

acknowledges that she told his attorney that "she was not willing to testify and did not know

whether or not the Defendant was present." Id. at 6 . The written statement annexed to his

motion is similarly ambiguous. See Id., Ex. 5. Given this meager evidence, the petitioner cannot

satisfy either prong of the Strickland standard. The ineffective assistance of trial counsel claim

raised in the petitioner's first § 440 motion was therefore properly denied.

The petitioner raised additional ineffective assistance of trial counsel claims in his second

and third § 440 motions. However, the state court denied these successive motions because the

petitioner failed to include these additional claims in his initial § 440 motion. See People v.

Rhodes, Ind. No. 2911-97, Memo. at 2 (Queens Cty. Supreme Ct. May 9, 2003) (citing N.Y.

Crim. Proc. L. § 440.10(3)(c)); People v. Rhodes, Ind. No. 2911-97, Memo. at 1 (Queens Cty.

Supreme Ct. Mar. 24, 2004) (referencing rationale from decision denying second § 440 motion).

The procedural rule relied upon in denying these motions states that a court may deny successive

§ 440 motions if in "a previous motion made pursuant to this section, the defendant was in a

position adequately to raise the ground or issue underlying the present motion but did not do so. .

. . ." N.Y. Crim. Proc. L. § 440.10(3)(c). This ground for denying the petitioner's § 440 motions functions as a procedural bar to federal habeas relief. See Rosario v. Bennett, No. 01 Civ. 7142, 2002 WL 31852827, at *22 (S.D.N.Y. Dec. 20, 2002) (failure to assert claim in first § 440 motion "mandates dismissal of that claim under the adequate and independent state ground doctrine"); Ryan v. Mann, 73 F.Supp.2d 241, 248-49 (E.D.N.Y. 1998). Since the petitioner has not asserted any cause for or prejudice due to these procedural defaults or demonstrated a fundamental miscarriage of justice, this court is barred from reviewing these additional claims of ineffective assistance of trial counsel.

### 6. Ineffective Assistance of Appellate Counsel

As a final ground for habeas relief, the petitioner claims that he was denied the effective assistance of appellate counsel. See Pet. ¶ 12. The two-prong Strickland test also applies to claims of ineffective assistance of appellate counsel. See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Evitts v. Lucey, 469 U.S. 387, 396-97 (1985)). A habeas petitioner may establish constitutionally deficient assistance if he shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." Aparicio, 269 F.3d at 99 (internal quotation marks and citations omitted). Finally, even if an attorney's performance were objectively unreasonable and unprofessional, the petitioner must still prove prejudice. That is, the petitioner must show "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" Aparicio, 269 F.3d at 95 (quoting Strickland, 466 U.S. at 694).

The petitioner asserted ineffective assistance of appellate counsel claims in two separate petitions for a writ of error coram nobis, both of which were denied on the merits. See People v. Rhodes, 818 N.Y.S.2d 485 (N.Y. App. Div. 2006); People v. Rhodes, 828 N.Y.S.2d 914 (N.Y. App. Div. 2007). In his first coram nobis petition, the petitioner alleged that his appellate counsel was ineffective for failing to raise several claims on direct appeal: that trial counsel provided ineffective assistance, that his confession was involuntary and should have been suppressed, and that Detective Lockwood's testimony that he told the petitioner that he had been implicated in the crime should not have been admitted. In addition, the petitioner claimed that his appellate counsel misrepresented facts regarding Brian Miles, the alleged second suspect in the case. In his second coram nobis petition, the petitioner identified an additional claim that he argued his appellate counsel should have raised on direct appeal, that the evidence was legally insufficient to convict him.

The petitioner cannot demonstrate that these issues were significantly weaker than the issues that his appellate counsel chose to raise on direct appeal. Appellate counsel focused on two primary claims in his brief on direct appeal: that the prosecutor's misconduct deprived the petitioner of a fair trial and that the trial court's preclusion of cross-examination regarding an alleged second suspect deprived the petitioner of the opportunity to present a defense. See Brief for Defendant-Appellant, People v. Rhodes, 782 N.Y.S.2d 788 (N.Y. App. Div. 2004). These arguments, while ultimately unsuccessful, are not weaker than the arguments the petitioner claims should have been raised. The record suggests that the decisions by trial counsel challenged by the petitioner were all legitimate strategic decisions. The petitioner has not identified how his contentions regarding the voluntariness of his confession and Detective

Lockwood's testimony about the interrogation presented viable issues for appeal. Similarly, the petitioner's argument regarding the sufficiency of the evidence is contradicted by the trial record, which included Detective Lockwood's testimony that the petitioner had confessed to all of the essential elements of the crimes charged. Furthermore, especially since the petitioner raised most of these issues in his supplemental pro se brief, he cannot establish that he was prejudiced by appellate counsel's decision not to raise these issues. Finally, there is no indication that appellate counsel misrepresented any facts regarding Brian Miles or that his choice of words, see Fabricant Aff. ¶ 15, People v. Rhodes, 818 N.Y.S.2d 485 (N.Y. App. Div. 2006), prejudiced the petitioner in any way. The petitioner's claims for habeas relief based on the ineffective assistance of appellate counsel must be denied.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/
Allyne R. Ross
United States District Judge

Dated: May 11, 2009
      Brooklyn, New York

SERVICE LIST:

*Pro Se Petitioner*

Oscar Rhodes
00A7092
A3-304
Green Haven Corr. Facility
PO Box 4000
Stormville, NY 12582

*Attorney for the Respondent*

Jennifer Hagan
Queens District Attorney's Office
125-01 Queens Blvd
Kew Gardens , NY 11415